F I L E D
Clerk
District Court

APR 03 2025

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| THE GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC, | CIVIL CASE NO. 22-00011 |
| Petitioner, | |
| vs. | |
| JOHN K. BALDWIN, BRIDGE CAPITAL LLC, LAO HOLDINGS N.V., SANUM INVESTMENTS LTD., and SHAWN SCOTT, | **DECISION AND ORDER** Granting Respondents John K. Baldwin and Bridge Capital LLC's Motion to Dismiss Amended Petition (ECF No. 59) |
| Respondents. | |

In this action to enforce foreign arbitral awards, Respondents John K. Baldwin ("Baldwin") and Bridge Capital LLC[1] ("Bridge Capital") move to dismiss the Amended Petition to Enforce Foreign Arbitral Awards (the "Amended Petition") filed by Petitioner, The Government of the Lao People's Democratic Republic ("GOL" or "Petitioner"). Respondents argue (1) GOL's attempt to enforce the awards against the non-debtor Respondents is premature and should be dismissed, (2) GOL failed to sufficiently allege a claim for veil piercing, and (3) Baldwin is not estopped from defending against the alter ego allegations. *See* Resp'ts' Mot. Dismiss, ECF No. 59. Having heard argument from the parties on January 10, 2025, *see* Mins. ECF No. 102, and reviewed relevant authority as well as the parties' filings and supplemental briefs, *see* ECF Nos. 59, 63, 75, 109 and 110, the court now issues this Decision and Order granting the Respondents' Motion to Dismiss

---

[1] Baldwin and Bridge Capital shall collectively be referred to as the "Respondents."

1  as discussed below.

2  **I.    BACKGROUND**

3        A.  Investments in Laos

4        In 2007, Baldwin and Shawn Scott ("Scott")  became involved in casino and gaming

5  businesses in Laos.  Am. Pet., at 26, ECF No. 55, and 1st Arbitral Award[2] at ¶ 1, ECF Nos. 55-2

6  to 55-4.  For this purpose, they incorporated Sanum Investment Ltd. ("Sanum") in Macau.  *Id.*

7  Sanum partnered with a Loatian conglomerate, ST Holdings, to finance and build two casino projects

8  and three slot machine clubs in Laos.  Am. Pet. at ¶ 26, ECF No. 55, 1st Arbitral Award at ¶ 1, ECF

9  No. 55-2.  One of the casinos – the Savan Vegas Hotel and Casino ("Savan Vegas Casino") – was

10  built and operated successfully, but the second casino (Paksong Vegas Casino) was never built.  *Id.*

11  GOL asserts that Baldwin funded these investments through loans from Bridge.  Am. Pet. at ¶ 26,

12  ECF No. 55.

13        GOL alleges that in January 2012, Baldwin and Scott created LHNV in Aruba, and "inserted

14  LHNV into the corporate ownership chain between themselves and Sanum."  Am. Pet. at ¶¶ 28 and

15  40A, ECF No. 55.  Baldwin and Scott are alleged to each own 50% of LHNV, and LHNV owned

16  100% of Sanum.  *Id.*  Sanum owned 80% of the Savan Vegas Casino.  *Id.*

17        Disputes eventually emerged between Sanum, its local Lao partners and GOL. 1st Arbitral

18  Award at ¶ 2, ECF No. 55-2, and 3rd Arbitral Award[3] at ¶66, ECF No. 55-9.

19        B.  The BIT 1 Arbitration Proceedings

20        Respondents alleged that by mid-August 2012, "GOL began taking expropriatory actions that

21  Sanum and LHNV contended violated treaty protections GOL promised to foreign investors."

22

23

24        [2] Exhibit B to the Amended Petition is a copy of the award issued by the International Centre

25  for Settlement of Investment Disputes on August 6, 2019, in the arbitration proceeding between Lao
Holdings N.V. ("LHNV") and GOL.  Exhibit B shall be referred to as the "1st Arbitral Award."

26        [3]  Exhibit G to the Amended Petition is a copy of the award issued by the Singapore

27  International Arbitration Centre on August 11, 2021, in the arbitration proceeding between Sanum,
LHNV, San Marco Capital Partners LLC, Kelly Gass and GOL.  Exhibit G shall be referred to as the

28  "3rd Arbitral Award."

1    Resp'ts' Mem. Supp. Mot. Dismiss Am. Pet. at 3,[4] ECF No. 59-1.  This led Sanum and LHNV to

2    initiate two Bilateral Investment Treaty ("BIT") arbitration proceedings.  *Id.*  On August 14, 2012,

3    Sanum commenced an arbitration proceeding against GOL under the BIT between the government

4    of the People's Republic of China and GOL (the "Sanum Proceeding").  Am. Pet. at ¶ 30, ECF No.

5    55.  On the same day, LHNV initiated an arbitration proceeding against GOL under the BIT between

6    GOL and the Kingdom of the Netherlands (the "LHNV Proceeding").[5]  Am. Pet. at ¶ 29, ECF

7    No. 55.

8            On June 15, 2014, the parties settled the BIT 1 Arbitrations by entering into a Deed of

9    Settlement. Resp'ts' Mem. Supp. Mot. Dismiss Am. Pet. at 3, ECF No. 59-1, and 3rd Arbitral Award

10   at ¶ 69, ECF No. 55-9.  On June 17, 2014, the parties "entered into a Side Letter amending,

11   correcting and clarifying certain points in the Deed [of Settlement]."  *Id.* "The BIT 1 Arbitrations

12   were suspended pending completion of the terms of settlement."  *Id.* at ¶ 71.

13           Subsequently, the parties each alleged the other had materially breached the terms of the

14   settlement agreement. *Id.* at ¶¶ 72-76. The BIT 1 Arbitrations were reinstated.[6]  On August 6, 2019,

15   the BIT 1 tribunals issued two awards.  Resp'ts' Mem. Supp. Mot. Dismiss Am. Pet. at 3, ECF

16   No. 59-1, and 1st and 2nd Arbitral Awards,[7] ECF Nos. 55-2 to 55-5.  The two awards dismissed all

17   of Sanum and LHNV's claims and awarded GOL its fees, expenses and costs of the arbitration.  Am.

18

19           [4]  The page reference refers to the internal page number of the document, not the page

20   number of the CM-ECF generated header.

21           [5]  The Sanum Proceeding and the LHNV Proceeding are collectively referred to as the "BIT 1

22   Arbitrations."

23           [6]  Sanum and LHNV also initiated additional BIT arbitrations against GOL (the "BIT 2

24   Proceedings"), and, at the briefing stage of the instant motion, the BIT 2 tribunal had not yet issued
     an award in those proceedings. *See* Mot. Dismiss at 4, ECF No. 59-1, and 3rd Arbitral Award at ¶77,

25   ECF No. 55-9.  At the hearing on the Motion to Dismiss, Respondents' counsel informed the court
     that the BIT 2 tribunal issued a ruling in Sanum and LHNV's favor.  *See* Tr. of Oral Argument at 11-

26   13, ECF No. 107.

27           [7]  Exhibit D to the Amended Petition is a copy of the award issued by the Permanent Court
     of Arbitration on August 6, 2019, in the arbitration proceeding between Sanum and GOL.  Exhibit D

28   shall be referred to as the "2nd Arbitral Award."

1  Pet. at ¶ 34, ECF No. 55.  In the Sanum Proceeding, GOL was awarded $1.78 million, and in the

2  LHNV proceeding, GOL was awarded approximately $1.95 million.  *Id.*

3          On November 6, 2019, Sanum and LHNV filed an action in the High Court of Singapore to

4  set aside the two BIT 1 awards.  *Id.* at ¶ 38.  The Singapore International Commercial Court

5  dismissed the action, and LHNV/Sanum appealed that decision to the Singapore Court of Appeal.

6  *Id.*  On November 22, 2022, the Singapore Court of Appeals issued its ruling dismissing the appeal

7  and awarded costs to GOL.  *Id.*

8          C.   The SIAC Arbitration Proceeding

9          On April 16, 2015, GOL took control of the Savan Vegas Casino.  3rd Arbitral Award at

10  ¶ 78, ECF No. 55-9.  GOL entered into a management contract with San Marco Capital Partners,

11  LLC ("San Marco") for the management, sale and marketing of the Savan Vegas Casino, and Kelly

12  Gass signed the contract as the President of San Marco.  *Id.* at ¶ 79.

13          On December 19, 2017, Sanum and LHNV initiated another arbitration proceeding under an

14  arbitration agreement entered into between LHNV/Sanum and San Marco and Ms. Gass, under the

15  Rules of the Singapore International Arbitration Centre (the "SIAC Proceeding").  *See* Am. Pet. at

16  ¶ 35, ECF No. 55 and Resp'ts' Mem. Supp. Mot. Dismiss Am. Pet. at 4, ECF No. 59-1.  GOL

17  intervened as a respondent in the SIAC Proceeding because GOL had indemnified San Marco.  Am.

18  Pet. at ¶ 35, ECF No. 55.

19          Ultimately, the SIAC tribunal issued an award on August 11, 2021, dismissing all of

20  LHNV/Sanum's claims and awarding San Marco and Ms. Gass a combined sum of $437,200.  3rd

21  Arbitral Award at ¶ 350, ECF No. 55-9.  The SIAC tribunal also awarded GOL a total of $862,425.

22  *Id.*  Based on a subrogation agreement GOL entered with San Marco and Ms. Glass on October 28,

23  2021, GOL  seeks to sue for and recover the full amount of the SIAC award.  Am. Pet. at ¶ 36, ECF

24  No. 55.

25          On November 12, 2021, LHNV/Sanum filed an action in the High Court of Singapore to set

26  aside the SIAC Award.  *Id.* at ¶ 39.  The Singapore International Commercial Court dismissed the

27  action, and LHNV/Sanum appealed.  *Id.*  On November 19, 2022, the Singapore Court of Appeals

28  dismissed the appeal and awarded costs to GOL.  *Id.*

D.  Attempts to Collect on the Awards

After the two BIT 1 tribunals issued their awards on August 6, 2019, GOL wrote to LHNV's Managing Director in Aruba, giving notice of the award and requesting the Managing Director to explain what steps LHNV would take to satisfy the award. *Id.* at ¶ 41.O.

GOL also filed a civil suit in Thailand to enforce the LHNV arbitral award against Baldwin, since Baldwin had an estate in Thailand and did business there. *Id.* at ¶ 41.P. Baldwin filed a sworn statement in the Thailand case stating "I am not a director of [LHNV]. I have no authorization to do business operations for [LHNV]."[8]  *Id.*

In April 2020, GOL filed suit against Baldwin and Bridge in the U.S. District Court for the District of Idaho[9] to enforce the two BIT 1 awards against them. *See The Gov't of Lao People's Democratic Republic v. Baldwin, et al.*, Case No. 2:20-CV-00195-CRK (D. Id.) (the "*Idaho Case*"). The court gave GOL three attempts to amend its complaint, and on August 29, 2022, the Idaho district court dismissed the claim against Baldwin and Bridge for lack of personal jurisdiction. *Id.,* Mem. Decision and Order re: Motion to Dismiss Third Am. Compl., ECF No. 163.

E.  Procedural History

On August 1, 2022, GOL filed the original Petition to Enforce Foreign Arbitral Awards (the "Petition") and named LHNV, Sanum, Baldwin and Bridge as respondents. *See* Pet., ECF No. 1. GOL sought a judgment enforcing the three arbitral awards against LHNV and Sanum and also petitioned to enforce the awards and to enter judgment against Baldwin and Bridge, as the alter egos of the award debtors.

On November 29, 2022, GOL and respondents Baldwin and Bridge entered into a stipulation to extend the time for Baldwin and Bridge to respond to the Petition. *See* Stip, ECF No. 3. The court granted the stipulation and gave Baldwin and Bridge until January 9, 2023, to respond to the

[8]  The Amended Petition is silent as to how the Thailand court ruled in the civil action.

[9]  GOL asserted that Baldwin and Bridge maintained bank accounts at the Idaho Independent Bank. Am. Pet. at ¶ 41.N., ECF No. 55. GOL claimed that the legal fees and costs associated with the arbitration proceedings were paid from the Idaho bank accounts. *Id.* GOL further asserted that "Baldwin closed Sanum's bank account in the Idaho Independent Bank in late 2019 after [GOL] informed his counsel it would seek to enforce the arbitral awards in Idaho." *Id.* at ¶ 50.

1   Petition.  *See* Order, ECF No. 4.

2         On January 9, 2023, Baldwin and Scott filed a Motion to Dismiss the Petition.  *See* ECF

3   No. 5.

4         On March 17, 2023, GOL filed a motion requesting Chief Judge Manglona to recuse herself

5   from this matter.  *See* ECF No. 13.  After briefing on the matter, Chief Judge Manglona issued an

6   Order on April 26, 2023, recusing herself from this case.  *See* Order of Self Recusal, ECF No. 19.

7   On April 28, 2024, the below-signed judge was designated to handle this case.  *See* ECF No. 20.

8         On August 17, 2023, GOL filed a Motion to Amend the Petition to include additional

9   allegations against Baldwin and to include Scott as a respondent.  *See* ECF No. 26.  The court

10  granted the motion on October 16, 2023.  *See* Order, ECF No. 51.

11        On November 15, 2023, GOL filed the Amended Petition.  *See* Am. Pet., ECF No. 55.

12        Pursuant to a Stipulation of the parties that was granted by the court, *see* ECF Nos. 56-57,

13  on December 4, 2023, Respondents Baldwin and Bridge filed the instant Motion to Dismiss the

14  Amended Petition.  *See* Mot. Dismiss, No. 59.  Additionally, LHNV filed a separate Motion to

15  Dismiss the Amended Petition.[10]  *See* ECF No. 58.

16        On February 19, 2024, GOL filed its Opposition to the Motion to Dismiss.  *See* GOL's

17  Opp'n, ECF No. 63.

18        On April 8, 2024, Baldwin and Bridge filed their Reply to GOL's Opposition.  *See* Resp'ts'

19  Reply, ECF NO. 75.

20        On May 30, 2024, Sanum and Scott filed a Stipulation to Extend Time to File Responsive

21  Pleadings.  *See* ECF No. 86.  Therein, Sanum, Scott and GOL agreed to extend the time for Sanum

22  and Scott to respond to the Amended Petition because the court's "decision on the Baldwin/Bridge

23  Motion [to Dismiss] may well resolve or clarify issues pertinent to Sanum's and Scott's responses

24  to the Amended Petition." *Id.* at 2.  On June 4, 2024, Magistrate Judge Michael J. Bordallo granted

25  the stipulation and ordered Sanum and Scott to respond to the Amended Petition no later than 15

26  _____

27        [10]  Briefing on LHNV's Motion to Dismiss was held on abeyance until the court ruled on
    Baldwin and Bridge's Motion to Dismiss.  *See* Stipulation, ECF No. 62, and Order Granting
28  Stipulation, ECF No. 64.

1   days after the court rules on the pending Motion to Dismiss filed by Baldwin and Bridge.  *See* Order,

2   ECF No. 87.

3   **II.    LEGAL STANDARD**

4          Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a claim for "failure to state

5   a claim upon which relief can be granted[.]"  Review of a Rule 12(b)(6) motion is generally limited

6   to the contents of the complaint and its attachments.  *Lee v. County of Los Angeles*, 250 F.3d 668,

7   688 (9th Cir. 2001).  On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken

8   as true and construed in the light most favorable to the nonmoving party. *Bell Atl. Corp. v. Twombly*,

9   550 U.S. 544, 570 (2007); *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207

10  (9th Cir.1996).  A court is not required to accept as true legal conclusions couched as factual

11  allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a

12  complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its

13  face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual

14  content that allows the court to draw the reasonable inference that the defendant is liable for the

15  misconduct alleged." *Iqbal*, 556 U.S. at 678.

16  **III.    ANALYSIS**

17         Respondents Baldwin and Bridge assert that GOL's attempt to enforce the three international

18  arbitral awards against them fails for three reasons.  First, Respondents assert they were not parties

19  to the arbitrations and are not debtors on the arbitral awards, and, thus, they have no obligation to

20  pay GOL, particularly when no court or tribunal has found them to be alter egos of either LHNV or

21  Sanum.  Second, Respondents argue that the Amended Petition fails to state a claim for veil piercing.

22  Finally, Respondents refute the Amended Petition's assertion that Baldwin is estopped from denying

23  that he is personally liable for the awards as the alter ego of LHNV and Sanum.  The court will begin

24  its discussion on the first issue since a ruling for the Respondents would negate the need to discuss

25  the two remaining arguments.

26         A.   Whether the Arbitral Awards can be Enforced Against Non-Debtors

27         Respondents argue that GOL's attempt to enforce the arbitral awards against them as non-

28  debtors to the awards is premature and must be dismissed.  Resp'ts' Mem. Supp. Mot. Dismiss Am.

Pet. at 7-10, ECF No. 59-1.  Respondents assert that "[t]he correct and available path forward for

GOL is: (1) to seek to recognize and enforce the awards against Sanum and LHNV in courts having

jurisdiction over them; and (2) if any resulting judgments remain unsatisfied, GOL may file a

separate plenary action against Baldwin and Bridge seeking to enforce the judgment under an alter

ego theory." *Id.* at 10.

Here, the Amended Petition asserts this court has subject matter jurisdiction over this action

pursuant to 9 U.S.C. §§ 203 and 207.  Section 203 provides that "[a]n action or proceeding falling

under the [New York] Convention[11] shall be deemed to arise under the laws and treaties of the

United States. The district courts of the United States . . . shall have original jurisdiction over such

an action or proceeding, regardless of the amount in controversy."  9 U.S.C. § 203.  Section 207

provides that

> [w]ithin three years after an arbitral award falling under the [New York] Convention
> is made, any party to the arbitration may apply to any court having jurisdiction under
> this chapter for an order confirming the award **as against any other party to the
> arbitration**.  The court shall confirm the award unless it finds one of the grounds for
> refusal or deferral of recognition or enforcement of the award specified in the [New
> York] Convention.

9 U.S.C. § 207 (emphasis added).

Based on the language of Section 207, particularly the phrase in bold above, Respondents

assert that confirmation and enforcement of an arbitral award is specifically restricted to the parties

to the arbitration.

---

[11]  The Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
commonly known as the "New York Convention," established a worldwide standard for enforcing
foreign arbitration agreements and awards in the signatory countries.  The United States signed the
New York Convention on September 30, 1970, and it was entered into force in the United States on
December 29, 1970.  Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21
U.S.T. 2517.

Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.*, implements the
United States' obligations under the New York Convention.  *see Scherk v. Alberto-Culver Co.*, 417
U.S. 506, 520 n.15 (1974).  "The goal of the [New York] Convention, and the principal purpose
underlying American adoption and implementation of it, was to encourage the recognition and
enforcement of commercial arbitration agreements in international contracts and to unify the
standards by which agreements to arbitrate are observed and arbitral awards are enforced in the
signatory countries."  *Id.*

1    Respondents rely on the case of *Orion Shipping & Trading Co., Inc. v. E. States Petroleum*

2   *Corp*, 312 F.2d 299 (2d Cir.), *cert. denied*, 373 U.S. 949 (1963) to support their position that an

3   action for confirmation of an arbitral award is not the proper means for piercing the corporate veil.

4   In *Orion*, petitioner and one of the respondents (Eastern Panama) entered into a contract for the

5   transportation of oil. *Id.* at 300. Eastern Panama's obligations under the contract were guaranteed

6   by its parent corporation and the parent's successor corporation (Signal). *Id.* The matter was

7   submitted to arbitration when Eastern Panama notified the petitioner that it would terminate the

8   contract because of a presidential proclamation limiting the importation of crude oil into the Untied

9   States. *Id.* The arbitrator determined that Eastern Panama was responsible for the breach of contract

10  and that Signal was liable on its guarantee if Eastern Panama were to default. *Id.* Petitioner then

11  filed an action to confirm the award, and Signal moved to vacate the award against it. *Id.* The trial

12  court declined to confirm that portion of the award holding Signal liable as a guarantor on the basis

13  that the arbitrator "exceeded his powers in determining the obligations of a corporation which was

14  clearly not a party to the arbitration proceeding." *Id.* The petitioner appealed, and argued that in an

15  action to confirm the award, the district court may adjudge Signal liable as an alter ego of Eastern

16  Panama. *Id.* at 301. The appellate court recognized that while "Eastern Panama [may be] thoroughly

17  dominated by Signal and that Signal is properly accountable on an 'alter ego' theory," the Second

18  Circuit held that "an action for confirmation is not the proper time for a [d]istrict [c]ourt to 'pierce

19  the corporate veil.'" *Id.* The court reasoned that in a confirmation action under 9 U.S.C. § 9,

20      the judge's powers are narrowly circumscribed and best exercised with expedition.
21      It would unduly complicate and protract the proceeding were the court to be
        confronted with a potentially voluminous record setting out details of the corporate
        relationship between a party bound by an arbitration award and its purported 'alter
22      ego'.

23  *Id.*

24      The Second Circuit further stated that its

25      holding does not preclude [petitioner] from prosecuting its action, still pending,
        against Signal as guarantor of Eastern Panama's obligations. Nor does it preclude
26      [petitioner] from bringing a separate action against Signal to enforce the award
        against Eastern Panama, invoking the 'alter ego' theory. But an action to confirm the
27      arbitrator's award cannot be employed as a substitute for either of these two quite
        distinct causes of action.

28  *Id.*

1    The Respondents' Motion to Dismiss cites to other district court decisions in New York and

2    Texas that relied on *Orion* and declined to confirm an arbitration award against a party that was

3    neither a party to the arbitration nor a debtor on the award.  *See* Resp'ts' Mem. Supp. Mot. Dismiss

4    Am. Pet. at 9-10.  In *GE Transp. (Shenyan) Co., Ltd. v. A-Power Energy Generations Sys., Ltd.,* 15

5    Civ. 6196 (PAE), 2016 WL 3525358 (S.D.N.Y. June 22, 2016), petitioner GET brought a petition

6    to confirm and enforce a foreign arbitration award.  *Id.* at *1.  In addition to seeking to confirm and

7    enforce the arbitration award against respondent A-Power, who was also the respondent in the

8    underlying arbitration action, GET "sought enforcement of the arbitration award and entry of

9    judgment jointly and severally against various entities related to A-Power under an alter-ego theory

10   of liability." *Id.*  Based on the holding in *Orion*, the district court declined to enforce the award as

11   to the alleged alter egos. *Id.* at *5-6.

12   The other case cited in the Respondents' memorandum is *Liberty Ins. Corp. v. Omni Constr.*

13   *Co.,* No. 4:21-CV-02119, 2022 WL 2373734 (S.D. Tex. June 9, 2022), *report and recommendation*

14   *adopted*, No. No. 4:21-CV-02119, 2022 WL 2359643 (S.D. Tex. June 29, 2022).  Unlike the instant

15   case or *Orion, Liberty* involved the confirmation of a domestic arbitration award.  In *Liberty,*

16   plaintiff (Liberty) issued liability policies to defendant Omni, a construction company.  *Id.* at *1.

17   Omni was the general contractor in the construction of a hotel owned by a development company,

18   Odom. *Id.*  A dispute arose over Omni's performance, and Odom initiated arbitration proceedings

19   against Omni pursuant to their agreement. *Id.*  Omni did not appear or take any action to defend

20   itself, nor did it notify Liberty of the arbitration and ask Liberty to defend Omni. *Id.*  The arbitration

21   tribunal ultimately issued an award in favor of Odom for approximately $5.67 million. *Id.*  Odom

22   then filed a petition in state court seeking a pre-suit deposition of Liberty, with topics for the

23   deposition to include Liberty's coverage for Omni's work on the hotel project, any limits of that

24   coverage, and any correspondence on the matter. *Id.*  Having received notice of the potential lawsuit,

25   Liberty then sued Omni and Odom in the Southern District of Texas, seeking a declaration that its

26   policies did not cover the events at issue in the underlying arbitration.  Odom counterclaimed,

27   seeking a declaratory judgment that Liberty did owe coverage and that Odom is entitled to payment

28   from Liberty. *Id.*  Odom also brought a counterclaim against Liberty and a crossclaim against Omni

1  for the confirmation of the award.  *Id.*  Liberty then filed a motion to dismiss.  *Id.*  The court

2  dismissed the counterclaim against Liberty and, citing to *Orion*, stated that "[c]onfirmation is not

3  the appropriate vehicle to hold Liberty – or any party, including Omni – 'ultimately . . . liable for the

4  arbitration award . . . .'  Instead, the proper avenue for holding a party liable is to enforce an

5  arbitration award that was already confirmed."  *Id.* at *5.

6          In response, GOL argues that Respondents' reliance on a 60-year old case is "misplaced."

7  GOL's Opp'n at 7, ECF No. 63.  GOL maintains that under the New York Convention, confirmation

8  of the arbitral awards is not required before recognition and enforcement.  Am. Pet. at ¶ 16, ECF

9  No. 55 and GOL's Opp'n at 5-7, ECF No. 63.  In support of its assertion, GOL cites to the case of

10  *CBF Industria de Gusa v. AMCI Holdings, Inc.*, 850 F.3d 58 (2d Cir. 2017).  In that case, appellants

11  CBF obtained a foreign arbitral award against SBT, a Swiss company that filed for bankruptcy in

12  Switzerland during the arbitration proceedings.  *Id.* at 66-67.  Because of SBT's bankruptcy, CBF

13  was unable to enforce its award against it, so CBF filed an action to enforce the foreign arbitral

14  award against SBT's alter egos and successors-in interest.  *Id.* at 68.  The district court dismissed the

15  enforcement action, holding that CBF "could enforce the award only after the award was confirmed

16  in Switzerland or another court of competent jurisdiction."  Based on *Orion*, the district court held

17  that CBF could not pursue enforcement of an arbitral award under the New York Convention and

18  the FAA without first confirming the award.  *Id.*  "The district court held that *Orion* required a

19  two-step process by which appellants were required to confirm the award prior to seeking

20  enforcement of that award."  *Id.*

21          Thereafter, CBF initiated an action to confirm the arbitral award in the same district court.

22  *Id.* at 69.  However, as a legal entity, "SBT was effectively a nullity after it was deleted from the

23  Swiss Commercial Register," which meant "it [was] no longer able to . . . be sued or have debt

24  collection proceedings filed against it." *Id.* (italics omitted).  The district court thus held that "SBT

25  lacked capacity to be sued because it was no longer a corporate entity according to Swiss law."  *Id.*

26  CBF then appealed from the dismissals of the enforcement action and the confirmation action.  *Id.*

27  at 70.

28          The Second Circuit ultimately reversed the district court's dismissals.  The appellate court

1    stated that "both the New York Convention and its implementing legislation in Chapter 2 of the FAA

2    envision a single-step process for reducing a foreign arbitral award to a domestic judgment." *Id.*

3    at 72 (quotation marks omitted).   The court further explained:

4            Under the New York Convention, this process of reducing a foreign arbitral
5        award to a judgment is referred to as "recognition and enforcement." "Recognition"
         is the determination that an arbitral award is entitled to preclusive effect;
         "Enforcement" is the reduction to a judgment of a foreign arbitral award . . . .
6        Recognition and enforcement occur together, as one process, under the New York
         Convention.
7            Chapter 2 of the FAA implements this scheme through Section 207, which
         provides that any party may, "[w]ithin three years after an arbitral award . . . is made,
8        . . . apply to any court having jurisdiction under this chapter for an order confirming
         the award."  Additionally, Chapter 2 of the FAA provides that "[t]he court shall
9        confirm the award unless it finds one of the grounds for refusal or deferral of
         recognition or enforcement of the award specified in the [New York] Convention"
10       at Article V.  Read in context with the New York Convention, it is evident that the
         term "confirm" as used in Section 207 is the equivalent of "recognition and
11       enforcement" as used in the New York Convention for the purposes of foreign
         arbitral awards. As the United States as amicus curiae explained, "the 'confirmation'
12       proceeding under Chapter Two of the FAA fulfills the United States' obligation
         under the [New York] Convention to provide procedures for 'recognition and
13       enforcement' of [New York] Convention arbitral awards."  A single proceeding,
         therefore, "facilitate[s] the enforcement of arbitration awards by enabling parties to
14       enforce them in third countries without first having to obtain either confirmation of
         such awards or leave to enforce them from a court in the country of the arbitral situs."
15           This, in fact, was the entire purpose of the New York Convention, which
         succeeded and replaced the Convention on the Execution of Foreign Arbitral Awards
16       ("Geneva Convention").  The primary defect of the Geneva Convention was that it
         required an award first to be recognized in the rendering state before it could be
17       enforced abroad. This was known as the "double exequatur" requirement, and the
         New York Convention did away with it by eradicating the requirement that a court
18       in the rendering state recognize an award before it could be taken and enforced
         abroad.

19

20   *Id.* at 70-72 (internal citations omitted).

21           The Second Circuit concluded that

22       the district court erred in holding that appellants were required to confirm their
         foreign arbitral award before they would be allowed to enforce it. The New York
23       Convention and Chapter 2 of the FAA require only that the award-creditor of a
         foreign arbitral award file one action in a federal district court to enforce the foreign
24       arbitral award against the award-debtor. . . . To the extent, then, that a confirmation
         proceeding is required for nondomestic arbitral awards, such a procedure would be
25       in conflict with the single step procedure mandated by Chapter 2 and the New York
         Convention for foreign arbitral awards.

26

27   *Id.* at 74.

28           The *CBF Industria* decision further stated that

Case 1:22-cv-00011    Document 111    Filed 04/03/25    Page 13 of 21

*The Government of the Lao People's Democratic Republic v. John K. Baldwin, et al.*, Civil Case No. 22-00011
Decision and Order Baldwin and Bridge Capital's Motion to Dismiss Amended Petition                    page 13 of 21

appellants properly sought to have the district court enforce a foreign arbitral award under its secondary jurisdiction. On remand, therefore, we instruct the district court to evaluate appellants' Enforcement Action, particularly appellants' effort to reach appellees as alter-egos of SBT, under the standards set out in the New York Convention, Chapter 2 of the FAA, and applicable law in the Southern District of New York.

. . .

[T]he sole issue at present for the district court to consider on remand pertains to the liability of appellees for satisfaction of appellants' foreign arbitral award as alter-egos of the award-debtor under the applicable law in the Southern District of New York. We leave further legal and factual development of this issue, and any other barriers to enforcement that appellees may argue on remand, to the district court.

*Id.* at 75-76.

The Respondents counter that GOL's reliance on *CBF Industria* is inapposite. The Respondents assert that the facts in the *CBF Industria* case are materially different than the facts in the instant case. Resp'ts' Mem. Supp. Mot. Dismiss Am. Pet. at 8, ECF No. 59-1. There, the award debtor ceased to exist, and there was no award debtor to pursue. Here, Sanum and LHNV still exist, and Respondents maintain that the arbitral awards can be confirmed or recognized and enforced against them. *Id.* Additionally, Respondents argue that the analysis in *CBF Industria* was flawed because the court "improperly omitted critical statutory language" under Section 207 with regard to "confirming the award as against any other party to the arbitration." *Id.*

GOL's Opposition also cites to the case of *Ministry of Def. of Islamic Republic of Iran v. Gould, Inc.,* 969 F.2d 764 (9th Cir. 1992), and asserts that said case "patently validates the propriety of the procedure requested by [GOL], a single action to confirm an international arbitral award and pierce the corporate veils of the award debtors." GOL's Opp'n at 4, ECF No. 63. In *Ministry of Defense,* the government of Iran entered into an agreement with Hoffman Export Corporation ("Hoffman") in 1975 for the sale of military communications equipment and services to Iran. *Id.* at 765. All shares of Hoffman stock were acquired by Gould, Inc. in January 1978, and in April 1978, Hoffman entered into a second agreement with the Iranian government to provide more military communications equipment and services. *Id.* In November 1979, the U.S. embassy in Teheran, Iran was seized, and Hoffman's performance of the two agreements was disrupted. *Id.* In 1980, Hoffman filed suit against Iran, alleging a breach of contract. *Id.* This suit was eventually

1  dismissed without prejudice based on an agreement between the United States and Iran that

2  established a Claims Tribunal where nationals of either country could present their claims against

3  the government of the other. *Id.* at 766-67.  Hoffman then brought claims against Iran before the

4  Claims Tribunal, alleging breach of contracts, and Iran filed counterclaims against Hoffman also

5  alleging breach of the contracts. *Id.* at 767.  While the arbitration was pending,

6      Hoffman was merged into Gould Marketing, Inc. ("GMI").  During this time, all
7      shares in GMI were owned by Gould International, Inc. ("GII"), and all shares in GII
       were in turn owned by Gould, Inc.  Thus GMI was Hoffman's successor in interest,
       and, as was Hoffman, a wholly-owned subsidiary of Gould, Inc.  GMI was
8      substituted for Hoffman as the claimant in the pending arbitration before the Claims
       Tribunal.

9

10  *Id.*

11      The Claims Tribunal "rejected both parties' breach of contract claims, concluding instead that

12  '[p]erformance had become essentially impossible.'" *Id.*  A further hearing was held and ultimately

13  the Claims Tribunal concluded that GMI owed Iran approximately $3.6 million.  *Id.*

14      Iran sought a confirmation and enforcement of the Claims Tribunal award in district court,

15  and although only GMI was named in the Claim Tribunal award, Iran also sought enforcement

16  against Gould, Inc., Hoffman and GII.  *Id.*  On cross motions for summary judgment, the district

17  court held that Ian failed to show that Gould, Inc. was the alter ego of Hoffman, GMI or GII and thus

18  dismissed Gould, Inc.  *Id.* at 768.  Iran appealed the dismissal of Gould, Inc. as a party, and the Ninth

19  Circuit affirmed.  *Id.* at 770.

20      The court concurs with the Respondents that GOL's reliance on the Ninth Circuit's decision

21  in *Ministry of Defense* does not support GOL's position because the *Ministry of Defense* case never

22  specifically addressed the issue raised here – whether it is proper for an award creditor to bring a

23  confirmation proceeding to enforce an arbitral award against non-debtors who are alleged alter egos

24  of the award debtor.

25      Finally, at oral argument, Respondents raised the case of *Al-Qarqani v. Chevron Corp.*, 2019

26  WL 4729467 (N.D. Cal. Sept. 24, 2019), and the parties' supplemental briefs further discuss the

27  case.  In *Al-Qarqani*, the government of Saudi Arabia transferred certain land to an official who in

28  turn leased it to an affiliate of what later became Chevron Corporation.  *Id.* at *1-4.  Numerous heirs

of the official brought suit brought suit against various Chevron entities, claiming that said entities

owed them rent. *Id.* at *1. The petitioners initiated arbitration proceedings, and ultimately sought

to confirm the $18 billion arbitral award. *Id.* at *1-2. Relevant to this case, the district court noted

that

> Chevron USA, Inc., sued in the action, was not named as a party in the arbitration
> proceedings. It is therefore dismissed on this basis alone. *See* 9 U.S.C. § 207 ("any
> party to the arbitration may apply to any court having jurisdiction under this chapter
> for an order confirming the award as against any other party to the arbitration.").

*Id.* at *3, n.1. The court also cited the *Orion* case in the footnote and further noted that

> Petitioners also filed a separate petition to confirm an award against another unnamed
> party, Aramco Services Company, which was dismissed by the District Court in
> Texas because, *inter alia*, the party was not named in the arbitration proceedings.
> (*See* Dkt. No. 161-1, *Al-Qaraqani [sic ] v. Arabian Am. Oil Co.*, No. 18-cv-01807
> (S.D. Tex, Aug. 2, 2019).

The district court ultimately granted Chevron Corporation's motion to dismiss the petition,

*id.* at *7, and the petitioners appealed. *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018 (9th Cir. 2021).

In affirming the district court's dismissal of Chevron U.S.A. Inc., the Ninth Circuit stated:

> [A]s to Chevron U.S.A., the heirs have advanced no non-frivolous theory of
> enforcement. Chevron U.S.A. is not named in the arbitral award the heirs seek to
> enforce. *See* 9 U.S.C. § 207 (authorizing petitions to confirm awards "as against any
> other party to the arbitration"). . . . Accordingly, we affirm the district court's
> dismissal for lack of subject-matter jurisdiction as to Chevron U.S.A.

*Id.* at 1025.

The court declines to enforce the arbitral awards against the Respondents as the alleged alter

egos of Sanum and LHNV, but the court's ruling does not reach the issue as to whether the

Respondents would ultimately qualify as alter egos. First, the court notes that the language used in

the FAA specifies "any party to the arbitration may apply to any court having jurisdiction . . . for an

order confirming the award **as against any other party to the arbitration.**" 9 U.S.C. § 207

(emphasis added). Here, the Respondents were not parties to the arbitration. The parties to the

BIT 1 arbitration proceedings were Sanum, LHNV and GOL. *See* 1st and 2nd Arbitral Awards, ECF

Nos. 55-2 to 55-5. The parties to the SIAC arbitration proceedings were Sanum and LHNV as

claimants, and San Marco Capital Partners LLC, Kelly Gass and GOL as the respondents in said

proceeding. *See* 3rd Arbitral Award, ECF No. 55-9. Exhibits B, D and G to the Amended Petition

clearly demonstrate that the Respondents were not parties to the arbitration proceedings and were not named as the award debtors in the arbitral awards. As non-parties, the court cannot confirm the arbitration awards against the Respondents under Section 207.

Second, the determination of whether the Respondents should be held liable as alter egos of LHNV and Sanum is inappropriate in the context of an action to confirm the arbitration awards. The court is persuaded by the Second Circuit's holding in *Orion* that "an action for confirmation is not the proper time for a [d]istrict [c]ourt to 'pierce the corporate veil'." *Orion*, 312 F.2d at 301. As noted in *Orion*, in a confirmation action,

> the judge's powers are narrowly circumscribed and best exercised with expedition. It would unduly complicate and protract the proceeding were the court to be confronted with a potentially voluminous record setting out details of the corporate relationship between a party bound by an arbitration award and its purported 'alter ego'.

*Id.*

"A confirmation proceeding is thus a 'summary proceeding of limited scope'[.]" *Liberty Ins.*, 2022 WL 2373734, at *5. The proper mechanism for GOL to hold the Respondents responsible for the arbitration awards as the alleged alter egos of Sanum and LHNV is to bring a separate action in court to pierce the corporate veil. *Orion, 312 F.2d at 301. See also GE Transp.*, 2016 WL 3525358, at *6; *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 589 (S.D.N.Y. 2024). Sections 203 and 207 simply do not empower the court to make fact-intensive alter ego determinations concerning non-parties to the arbitration.

The court is not persuaded by *CBF Industria* decision or other cases cited by GOL. The *CBF Industria* decision is distinguishable because the award debtor there no longer existed, so CBF had no choice but to enforce its award against the award debtor's alleged alter egos and successors-in-interest. *CFB Industria*, 850 F.3d at 68. Here, the award debtors – Sanum and LHNV – exist and are named as respondents in this action. GOL still has the ability to confirm and enforce the awards against said award debtors under Section 207. Additionally, when quoting the language of Section 207, the *CBF Industria* decision omitted critical language that the award creditor may apply to confirm the award **"as against any other party to the arbitration."** *See CBF Industria*, 850 F.3d at 72. GOL contends that the Second Circuit's analysis "explains why the adoption of the [New

York] Convention requires the U.S. courts to confirm a foreign arbitral award in a single proceeding, including a claim involving *alter ego* defendants." GOL's Opp'n at 6, ECF No. 63 (italics in original). Contrary to GOL's assertion, the *CBF Industria* decision said nothing about alter egos being sued in a summary enforcement action. Instead, the *CBF Industria* opinion stated that "[t]he New York Convention and Chapter 2 of the FAA require only that the award-creditor of a foreign arbitral award file one action in a federal district court to enforce the foreign arbitral award **against the award-debtor**." *CBF Industria*, 850 F.3d at 74 (emphasis added).

Thus, based on the specific language of Section 207, the *Al-Qarqani* decisions, and the *Orion* case and its progeny, the court holds that GOL may not enforce the arbitral awards against the Respondents, who were not parties to the arbitration proceedings nor named as award debtors, in this summary action. As stated above, the court's ruling does not reach the issue of whether the Respondents would qualify as the alter egos for award debtors Sanum and LHNV.

B. Whether There is a Separate Ground for Jurisdiction Over Respondents

On January 13, 2025, the court issued an Order asking the parties for supplemental briefs on whether this court has diversity jurisdiction over the instant action in light of the discussion in the *GE Transp.* case regarding the two exceptions to *Orion* that limit its reach. *See* Order re Suppl. Briefs, ECF No. 103, which stated that *Orion* was still "good law," 2016 WL 3525358, at *6, but neither GOL nor the Respondents discuss or analyze the "two exceptions to *Orion*" raised by the Southern District of New York in *GE Transportation*. The first exception[12] "applies where 'the complaint specifies two grounds for subject matter jurisdiction,' such that the enforcement action can 'be construed as a separate action [from the confirmation action] to enforce the arbitration award against nonparties to the arbitration.' *Sea Eagle Mar., Ltd. v. Hanan Int'l, Inc.,* No. 84 Civ 3210

---

[12] The second *Orion* exception applies where a claim of piercing the corporate veil would not unduly complicate the action of the court with respect to the arbitration award. *Id.* at *7 (internal quotations omitted). Because GOL's claim to pierce the corporate veil would unduly complicate the confirmation of the arbitration awards against LHNV and Sanum, and because the parties' filings do not address this issue, the court need not discuss this second exception any further.

1    (PNL), 1985 WL 3828, at *2 (S.D.N.Y. Nov. 14, 1985)."[13]  *Id.*   The court reviewed the petition

2    before it and noted "there [was] no separate jurisdictional basis for such an enforcement action"

3    because the petition's basis for the court's jurisdiction was 28 U.S.C. § 1331 (general federal

4    question jurisdiction) and 9 U.S.C. § 203 (providing jurisdiction for cases falling under the New

5    York Convention). *Id.* at *7.  The court stated that "the [p]etition itself seems to recognize, these

6    two bases of jurisdiction coincide – the FAA is simply the source of federal question jurisdiction."

7    GET then argued that "a separate basis for subject matter jurisdiction over a separate enforcement

8    proceeding could be maintained on the basis of diversity jurisdiction." *Id.*  The court ultimately

9    determined there was a lack of diversity jurisdiction because "GET and A-Power are both foreign

10   entities; for diversity purposes, GET is considered a citizen of China and A-Power is considered a

11   citizen of the British Virgin Islands and China." *Id.*

12       Turning the court's attention to the Amended Petition here, GOL asserts two bases for the

13

---

14       [13]  In the *Sea Eagle* case, plaintiff sought to confirm and enforce an arbitration award

15   rendered against defendant Hanan Int'l, Inc. ("Hanan").  Plaintiff asserted that Hanan is a nonexistent

     corporation and thus defendants should be held liable for the arbitration award under either an

16   agency, alter ego or piercing the corporate veil theory. *Id.* at *1.  On ruling on a motion to dismiss

     for lack of personal jurisdiction brought by some of the defendants, the court stated

17

18           The Court of Appeals has held that an action to confirm an arbitration award
         is not the proper occasion for a district court to pierce the corporate veil or determine
19       issues of alter ego liability. *Orion Shipping & Trading Co. v. Eastern States
         Petroleum Corp. of Panama*, 312 F.2d 299 (2d Cir.), *cert. denied*, 373 U.S. 949
20       (1963).  The *Orion* court explained that the court's role in these proceedings is
         limited to determining whether the arbitration award falls within the four corners of
21       the dispute. *Id.* at 301.  The court also noted that the successful party in the
         arbitration may bring a separate action against a nonparty to the arbitration to enforce
22       the award under an 'alter ego' or piercing the corporate veil theory. *Id.*

23           If this were merely an action to confirm the arbitration award, its attempt to
24       impose liability on the defendants other than Hanan would have to be dismissed
         under *Orion*.  However, plaintiff's complaint specifies two grounds for subject matter
25       jurisdiction:  Federal Arbitration Act, Title 9 U.S.C. and 28 U.S.C. § 1333 (general
         admiralty and maritime jurisdiction).  This action could thus be construed as a
26       separate action to enforce the arbitration award against nonparties to the arbitration.

27
     *Id.*  The court ultimately dismissed the complaint as to the moving defendants based on a lack of
28   personal jurisdiction over said defendants.

court's subject matter jurisdiction.  The first basis is Sections 203 and 207 of the FAA.  *See* Am. Pet. at ¶ 14, ECF No. 55.  The second basis is 28 U.S.C. § 1332,[14] as a suit "between a foreign state and citizens of the United States, Baldwin and Bridge, and the amount in controversy is in excess of $75,000.00."  *Id.* at ¶ 15.  A review of the Amended Petition's allegations regarding the citizenship of the respondents reflects the following

- Baldwin - citizen of the United States with a residence[15] in Saipan[16]

- Scott - has a residence in Saipan[17]

- Bridge - formed in the CNMI in 2005, with its principal place of business in Saipan[18]

- LHNV - incorporated in 2012 under the laws of Aruga, the Netherlands Antilles, with its principal place of business in Saipan;[19] and

- Sanum - incorporated in 2005 in Macau SAR, with its principal place of business in Saipan.[20]

For diversity purposes, a corporation is considered a citizen of the state in which it is

---

[14]  In pertinent part, this status provides:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –

. . .

(4) a foreign state . . . as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a)(4).

[15]  The Amended Petition asserts that Baldwin has a residence in Saipan, but for diversity purposes a party must be a citizen of the United States and be *domiciled* in a state of the United States.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  The Amended Petition does not address the *domicile* of either Baldwin or Scott.

[16]  Am. Pet. at ¶¶ 9 and 15, ECF No. 55.

[17]  Am. Pet. at ¶ 9A.

[18]  Am. Pet. at ¶ 10, ECF No. 55.

[19]  Am. Pet. at ¶ 11, ECF No. 55.

[20]  Am. Pet. at ¶ 10, ECF No. 55.

1    incorporated and the state of its principal place of business.  28 U.S.C. § 1332(c)(1).  With the

2    respondents aligned as set forth in the Amended Petition, Petitioner GOL – a foreign state – is an

3    alien suing citizens of a State (Saipan) and two other aliens (LHNV and Sanum).  This would divest

4    the court of diversity jurisdiction, since no provision of Section 1332 provides federal jurisdiction

5    when a foreign state sues citizens of a state *and* citizens of a foreign state.  *See Nike, Inc. v.*

6    *Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994) ("diversity

7    jurisdiction does not encompass a foreign plaintiff suing foreign defendants"); *Ed & Fred, Inc. v.*

8    *Puritan Marine Ins. Underwriters Corp.*, 506 F.2d 757, 758 (5th Cir. 1975) (finding lack of diversity

9    where alien brought action against a citizen of a state and another alien).  Accordingly, there is no

10   diversity jurisdiction between the parties to this action, and thus the first *Orion* exception is

11   inapplicable.

12           The court has reviewed the parties' supplemental briefs and is not persuaded by the additional

13   cases cited by GOL, many of which are irrelevant because they have nothing to do with confirmation

14   of arbitration awards against non-parties but instead discuss whether non-signatories to arbitration

15   agreements can be bound to such agreements.  GOL's reliance on *UniCredit Bank of Austria AG v.*

16   *Immobiliaria y Arrendador Cuadro S.A. de C.V.*, No. CV-23-01991, 2024 WL 5118419 (D. Ariz.

17   Dec. 16, 2024), is misplaced.  That decision did not discuss whether the court could confirm an

18   arbitral award against a non-party to the arbitration, and while that court examined factual alter ego

19   allegations in the pleadings, it did so only in the context of deciding whether it had *personal*

20   jurisdiction over the award debtor.  *Id.* at *7-8.  The court concludes that GOL has failed to

21   demonstrate that there is any other ground for jurisdiction over the Respondents.

22   **IV.    CONCLUSION**

23           Based on the specific language of Section 207, the *Al-Qarqani* decisions, and the *Orion* case

24   and its progeny, and the fact that neither of the *Orion* exceptions applies to this case, the court grants

25   the Respondents' Motion to Dismiss and finds that a confirmation action under Section 207 is not

26   the proper means for piercing the corporate veil as against non-parties to the arbitration proceedings.

27   Having so ruled, the court finds no further need to address the two remaining arguments raised in

28   ///

the Respondents' Motion to Dismiss and declines to do so.  The court orders that the Respondents

be dismissed from this action for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

**/s/ Frances M. Tydingco-Gatewood**
    **Designated Judge**
**Dated: Apr 03, 2025**